### J. T. CUNNINGHAM ET AL. v. SAN SABA COUNTY.

#### No. 25.

1. **Highway by Prescription.**—Before a highway can be established by prescription, it must appear that the general public, under a claim of right and not by mere permission of the owner, used some defined way, without interruption or substantial change, for the longest period of limitation prescribed by the statute.

2. **Permissive Use of Way.**—Where the use is merely permissive, there is no basis on which the right of way by prescription can vest. The use of vacant unenclosed land for twenty years by the public in passing and repassing will give no prescriptive rights.

3. **Limitation Against Owner.**—The claim against a county for damages to land from its unlawful use as a highway is barred in two years from the time of its actual use by the road overseer or hands in opening up or working same.

4. **Condemnation for Public Road.**—Condemnation proceedings, when notice is not given the owner of the land, will not affect the rights of such owner.

5. **Remedy of Owner — Cause of Action.**—The owner of the land taken without legal proceedings for a public highway may be either in an action to recover the land or by an action for the value of the land taken.

6. **Limitation.**—The exceptions of coverture and infancy in the statute of limitations apply to damages against the county for opening and using public highway over the lands of such parties.

APPEAL from San Saba.    Tried below before Hon. A. W. MOURSUND.

*Sidon Harris*, for appellants.—1.   A permanent right of way for a public road can not be acquired by a county over an individual's land by mere use by the public of a road, even for a long period of time, when

the land crossed and the whole section of country traveled is sparsely settled and unfenced.    Owen v. Crossett, 105 Ill., 359; State v. Horn, 35 Kans., 718; Smith v. Smith, 34 Kans., 301.

2. The court erred in rendering judgment against plaintiffs, when it is admitted that their private property has been taken for public use without any proceedings of condemnation, and without any payment or tender of payment to them of the actual damage done them thereby, which is admitted to be $500.    Shinkle v. Magill, 58 Ill., 422; Dainrell v. San Joaquin County, 40 Cal., 155; Brannan v. Macklenburg, 49 Cal., 676.

3. The court erred in holding that plaintiffs' right to recover in this case is barred by the statute of limitations, because the statute of limitations has no applications to this case, and because this suit was instituted within less time than two years after the trespass and injury occasioning the damage complained of were committed.

No brief for appellee reached the Reporter.

KEY, ASSOCIATE JUSTICE.—This suit was instituted by appellants, as plaintiffs, on the 9th day of August, 1888, to recover damages against appellee, San Saba County, for an alleged unlawful appropriation of a strip of land for a public road, extending across a league and labor of land owned by appellants.

Appellee pleaded title by prescription, and the two years statute of limitations was pleaded as a bar to appellants' claim for damages.

The appellants Mrs. S. A. Callahan and Mrs. Addie E. Leverett pleaded coverture in avoidance of the pleas of limitation and prescription, and appellant F. C. Cunningham pleaded minority for the same purpose.

The appellants J. T. Cunningham, A. C. Cunningham, Mrs. Addie E. Leverett, Mrs. S. A. Callahan, and Miss F. C. Cunningham inherited the tract of land across which the road in question runs from their father, who died on the 25th day of September, 1878, and who at the time of his death was insane, and had been in that condition for two or three years.

The testimony shows that the road in question has been traveled and used by the public across appellants' land for between fifteen and twenty years prior to the death of their father, and it has been so used and traveled ever since that time, embracing a strip of land about 40 feet wide, and running diagonally across the entire tract, varying in width, however, in some places from 10 to 75 yards, where the road would get muddy.

There is no testimony showing affirmatively that the appellants knew of the existence of the road on their land until August, 1883; nor is it shown that San Saba County, or any one acting for it or in behalf of the

public, ever claimed the exclusive right of the county or the public to use the strip of land in question as a public road until August, 1878.

It appears that in May, 1877, the Commissioners Court of San Saba County appointed a jury of view to establish a second class road from the town of San Saba to Chick's Crossing, on the Colorado River. The jury reported on the 12th day of August, 1878, establishing the road, in so far as this case is concerned, upon the same ground across the appellants' land as the road hereinbefore mentioned. Thereafter, and during the August term, 1878, of the Commissioners Court of said county, said court adopted the report of the jury of view, ordered the road to be opened, appointed an overseer for it, and apportioned hands to work the same. Such annual appointment of an overseer of the road and apportionment of hands have been kept up by the Commissioners Court of the county from that time to time of the trial; and it was shown affirmatively that such overseers and hands have kept the road open and free from obstructions, and worked the same for the county, from 1883 to the time of trial, except one week in July, 1887. Sometime in July, 1887, the appellants built a fence across the road in question, and the sheriff of the county, acting under the order of the county judge, removed the fence from across the road.

It was shown, that the jury of view gave no notice to appellants of their intention to lay off a road on their land; that they had no opportunity to present their claim for damages to the jury; and that no compensation had ever been allowed them for the use of said land or for the damage resulting from the establishment of the road thereon. Before bringing this suit appellants presented their claim for damages to the Commissioners Court of the county, and the same was rejected in toto.

Appellants' tract of land upon which the road is located is open prairie, and has never been under fence, nor used for any purpose except that of grazing live stock.

The court below held:

1. That at the time of the death of the father of the appellants the public had acquired an easement in the land, and that appellants inherited the same subject to the easement.

2. That the Commissioners Court of San Saba County having established the road in August, 1878, appellants' cause of action was barred by the statute of limitation.

We do not concur in the holding that the public had acquired an easement by prescription. As a general rule, before a highway can be established by prescription, it must appear that the general public, under a claim of right, and not by mere permission of the owner, used some defined way, without interruption or substantial change, for at least the longest period of limitation prescribed by statute against an action for the land; and many authorities hold that such use must be held for at least

twenty years. Elliott on Roads and Streets, 137; Schellhouse v. State, 110 Ind., 509; State v. Green, 41 Ia., 619; Pentland v. Keep, 41 Wis., 490; Johnson v. Lewis, 47 Ark., 66.

Where the use is merely permissive, and not adverse, there is no basis on which a right of way by prescription can rest. For this reason, it has been held that the use of vacant unenclosed land for twenty years by the public in passing and repassing will give them no prescriptive rights. State v. Horne, 35 Kans., 717; Rathman v. Norrenberg, 21 Neb., 467; Herrold v. Chicago, 108 Ill., 467; State v. Mitchell, 58 Ia., 567; Railway v. Parker, 41 N. J. Eq., 489; Stewart v. Frink, 94 N. C., 487.

Applying these tests to the case before us, we find that at least one essential element of a right founded upon prescription is wanting.

It was not shown that the county, or any one acting for it or for the public, ever asserted a right to the use of the land in question for a public road, adverse to the title and rights of the appellants, until August, 1878. Up to that time the use of the route traveled by the public as a public highway appears to have been merely permissive, and not antagonistic to the rights of appellants.

Besides, it has been held that a public road can not be established by prescription while the land over which the road runs is unimproved and unoccupied prairie land, over which people may travel at their pleasure. Smith v. Smith, 34 Kans., 293; State v. O'Laughlin, 19 Kans., 504; Railway v. Long, 27 Kans., 684; Graham v. Harnett, 10 Neb., 517; Hewins v. Smith, 52 Mass., 241; Hardin v. Jasper, 14 Cal., 643.

Upon the question of limitation, our conclusion is, that subdivision 1 of article 3203 of the Revised Statutes, which requires actions for injury done the estate or property of another to be brought within two years, has application; but our most difficult task has been to determine when this statute began to run.

The action of the Commissioners Court in approving the report of the jury of view and appointing an overseer and hands for the road was not binding as against appellants' ancestor, who owned the land; yet, whenever the owner obtained knowledge of the fact that the county, acting through the road overseer, had taken actual and visible possession of the road by working it, thereby asserting a claim to it for the county, then we believe limitation began to run.

This appears to be the doctrine announced in Franklin County v. Brooks, 68 Texas, 679; but, as there expressed, it is a mere statement of what the rule would be in a case different from the one then under consideration, and is therefore obiter dictum.

The action of the Commissioners Court in approving the report of the jury of view, etc., in so far as appellants are concerned, was an ex parte order, without binding force upon them; nor did it interfere in

anywise with their possession or use of the land; and until appellants were apprised of its existence, we know of no rule of law that would justify us in holding that they were chargeable with notice thereof, in the absence of such facts as would put them upon inquiry.

The overseer and hands assigned by the Commissioners Court going on the ground and working the road was, in our opinion, sufficient to put the owners of the land upon inquiry, and from that time the statute of limitations will run against appellants, except those who are under such disabilities as exempt them from its provisions.

While the testimony shows that overseers and hands were assigned to this road annually from 1878, it does not affirmatively appear that they worked the road at any time prior to 1883; and as two of the appellants were married women at that time, limitation did not begin nor run against them.

It is to be noted that this suit is for damages, and not for a recovery of the land. If the action was for the land, or if appellants' petition contained an alternative prayer for the land, the question of limitation, as against the suit for the land, would be altogether different from the one that we have just passed upon.

Nor have we considered the question as to whether a failure to recover damages, because of the plea of limitation, would bar a right of the owner of the land to maintain an action for its recovery.

It is settled, in the case of Hamilton County v. Garrett, 62 Texas, 602, that suits of this character may be maintained against counties; and appellants had the right to select this remedy alone if they saw proper to do so.

Because of the error pointed out, the judgment is reversed and the cause remanded for further proceedings in accordance with the rules of law above stated.

*Reversed and remanded.*

Delivered November 23, 1892.